Appeal of **ATKINS LUMBER CO., INC.**         Docket No. 253.

> In the absence of any evidence whatever respecting the capital cost of natural resources acquired after March 1, 1913, the Board will not undertake to review the reasonableness of a depletion unit established by the Commissioner.
>
> The net income of a taxpayer for the calendar year 1920 is subject to tax under the provisions of the Revenue Act of 1918 and the net loss provisions, both of that act and the Revenue Act of 1921, are inapplicable to affect the tax liability for the calendar year 1920.

Submitted December 4, 1924; decided January 13, 1925.

*M. C. Elliott, Esq.*, for the taxpayer.

*J. A. Adams, Esq.* (Nelson T. Hartson, Solicitor of Internal Revenue) for the Commissioner.

Before JAMES, STERNHAGEN, and TRUSSELL.

### FINDINGS OF FACT.

The taxpayer is a corporation organized under the laws of the Commonwealth of Virginia. In 1914 it acquired the standing timber

upon a tract of land located in Smith and Wood Counties, with the right to enter upon the land, cut, remove, and manufacture the timber into merchantable lumber. The taxpayer began operations during the year 1915, when the witness opened up the taxpayer's books of account. He has been in complete charge of all of the taxpayer's accounts from then until the present time. At the beginning of operations the quantity of standing timber acquired by the company was estimated at 40,000,000 feet and it was estimated that a depletion charge of $3.50 per thousand would probably cover the capital cost of the timber by the time it was cut. This depletion rate was followed in the accounts of the company until the end of the year 1917, at which time (quoting the witness) "it was discovered that the tract would not cut out the amount of timber theretofore estimated (40,000,000 feet) and in order to offset the deficiency and depletion for the prior years it was decided to set up a charge of $6.50 for the next year and until that deficiency was wiped out. We did that during the years 1918 and 1919. At that time the Treasury Department came upon us and we came up to Washington and they authorized us to go back from the beginning of the operation and set up a depletion charge of $4.57 per thousand instead of $3.50 and $6.50 that we had already put out. That is all there is to the depletion up to that date."

On the basis of the depletion charge of $6.50 per thousand the books of the company showed a profit for the year 1920 of a little more than $11,000. On the basis of the Commissioner's depletion rate of $4.57 per thousand, and other slight modifications, this book profit was increased to a figure near $22,000.

The books of the corporation were kept upon an accrual basis and the book profits shown at the end of the year 1920 were arrived at by taking into consideration inventories of lumber on hand, both at the beginning and at the end of the year.

The witness testified:

Q. That profit, of course, included the difference between the inventory on January 1 and December 31?—A. That was taken into consideration.

Q. How much of it was represented by cash and how much of it by cut timber; by manufactured timber?—A. I do not remember now, and I have not the papers with me, but I think something like 5,000,000 feet of timber cut that year; between four and five million feet.

Q. That was, of course, estimated in taking into consideration and determining the difference?—A. Yes.

Q. Did you realize the profit that you were estimating that you had as of that period?—A. There never has been a dollar actually—actual profit—realized in the business, in that year or any other year.

Q. So that apparent profit was merely a bookkeeping profit resulting from disallowance of depreciation and disallowance of part of the depletion?—A. Yes, sir.

Q. Have you got the land or just the timber?—A. The timber only. We own it on leased land.

On redirect examination it was brought out that the cutting of timber on the tract was completed on or about October 10, 1924, and that the company is now operating only for the purpose of closing up and liquidating its business, and further testimony was given as follows:

Q. Have you paid any dividends?—A. Never a dollar.

Q. Never had a profit distribution?—A. Never had a profit to distribute.

Q. Have you ever paid any taxes, any income taxes?—A. Yes, we have paid small amounts.

Q. You say all of the timber has been cut?—A. That has all been cut.

Q. Does the amount taken out as depletion equal the total cost of the timber?—A. It does not.

Q. What is the difference?—A. On the basis of putting the books on the Treasury figures there will be about $8,000 of the timber that could not be taken up by depletion.

Q. So that you have not completed the entire tract and there would be some $8,000 of the cost?—A. Yes, on the basis of the Government's figures.

### DECISION.

The deficiencies for the year 1919 in the sum of $111.61, and for the year 1920 in the sum of $3,403.95, as determined by the Commissioner, are approved.

### OPINION.

TRUSSELL: While it appears from the pleadings that some part of the proposed deficiencies as computed by the Commissioner are based upon modifications of deductions claimed by the taxpayer for depreciation of mill and logging equipment, no testimony or argument was presented to the Board upon this subject; and it is therefore taken for granted that the taxpayer has acquiesced in the Commissioner's adjustments of the depreciation deductions.

The whole burden of the taxpayer's complaint, therefore, rests upon its claims, first, that the depletion allowance of $4.57 per thousand feet of timber, as computed by the Commissioner, is insufficient to restore the capital cost of such timber and, second, that the taxpayer throughout the entire period of its operations has never actually realized any profit, and that the stockholders, when liquidation shall have been completed, will fail to receive a return of their actual investment.

Taking up the first contention, it appears that at the inception of its business the taxpayer estimated the depletion requirement at $3.50 per thousand feet of timber; that three years later it became convinced that this rate was too low and then claimed a rate of $6.50 per thousand feet of timber; that the Commissioner, as a result of his investigations and inquiries and the showings made before him by the taxpayer, has found and established a depletion rate of $4.57 per thousand feet of timber, which amount the taxpayer claims is insufficient to restore to the stockholders the capital cost of the timber.

It seems apparent when the Commissioner made his computation of a depletion rate that he must have had before him some definite figures of capital cost and estimated quantity of timber upon the tract. These figures and estimates apparently used by the Commissioner, however, were not furnished to the Board and no testimony on that subject was offered at the hearing. We, therefore, have no knowledge of any facts that can lead us to a determination of whether the Commissioner's depletion unit of $4.57 per thousand feet is the true rate or not. On the other hand, the taxpayer has

failed to produce before the Board any testimony or evidence of any character whatever showing its claimed cost of the timber, or any estimate of its quantity other than its estimate of 40,000,000 feet, and, therefore, there is in the record no basis upon which this Board can now compute a depletion unit or rate and we are entirely helpless to find whether the rate claimed by the taxpayer for the years 1919 and 1920 of $6.50 per thousand is too high or otherwise. The record thus leaves us wholly unable to find any basis for granting relief to this taxpayer upon the question of depletion of its timber resources.

Much stress was laid, both in the testimony on behalf of the taxpayer and in the argument of counsel, upon the fact that the total of all the company's operations from its inception in 1915 to its close in 1924, will result in losses, and that, therefore, apparent book profits for any given annual period, which profits have never been realized, should not be subject to income and profits taxes. It appears that the company's accounting system showed profits for the years 1919 and 1920, and it was argued that the following years of 1921 and 1922 showed losses, and that the apparent profits of 1919 and 1920 were more than exhausted by losses of the following years before such profits were in any sense realized by the stockholders of the taxpayer corporation. While this presents a situation which has a strong appeal, we can not overlook the fact that the taxing statutes have been designed to levy income and profits taxes upon the gains and profits of business for annual periods, and that each annual period must necessarily, under the provisions of the law, stand by itself, subject only to those provisions of the Revenue Acts of 1918 and 1921 permitting the adjustment of one year's net losses against another year's profits. But those provisions do not apply to the years 1919 and 1920 except as to losses of 1919. Therefore, the Board is without power to find any relief for this taxpayer and we are led inevitably to the conclusion that the Commissioner's findings must be approved.